UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

LILLY L. HUSKEY,                    )
                                    )
            Plaintiff,              )
                                    )
v.                                  )          No. 3:15-CV-279-PLR-CCS
                                    )
CAROLYN W. COLVIN,                  )
Acting Commissioner of Social Security, )
                                    )
            Defendant.              )

## REPORT AND RECOMMENDATION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the

Federal Rules of Civil Procedure, and the Rules of this Court for a report and recommendation

regarding disposition by the District Court of the Plaintiff's Motion for Summary Judgment and

Memorandum in Support [Docs. 14 & 15] and the Defendant's Motion for Summary Judgment

and Memorandum in Support [Docs. 16 & 17].  Lilly L. Huskey ("the Plaintiff") seeks judicial

review of the decision of the Administrative Law Judge ("the ALJ"), the final decision of the

Defendant Carolyn W. Colvin, Acting Commissioner of Social Security ("the Commissioner"),

denying the Plaintiff's application for disability insurance benefits and supplemental security

income.


I.      **ALJ FINDINGS**

        The ALJ made the following findings:

                1. The claimant meets the insured status requirements of the Social
                Security Act through December 31, 2015.

                2.   The claimant has not engaged in substantial gainful activity
                since July 1, 2010, the alleged onset date (20 CFR 404.1571 *et*

*seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: back disorder and affective mood disorder (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant is unable to climb ladders and is able to occasionally stoop, kneel[], crouch, and crawl. She must avoid all hazards. The claimant is able to perform simple and low-level detailed work. She is able occasionally to deal with others and to tolerate only infrequent change.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on July 18, 1972 and was 37 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from July 1, 2010, through the date of this

2

decision (20 CFR 404.1520(g) and 416.920(g)).

[Tr. 22-31].

## II.    DISABILITY ELIGIBILITY

"Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a).  A claimant will only be considered disabled if:

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); see 20 C.F.R. §§ 404.1505(a), 4015.905(a).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1.   If claimant is doing substantial gainful activity, he is not disabled.
>
> 2.  If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3.   If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4.   If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

3

> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). The claimant bears the burden of proof at the first four steps. Id. The burden shifts to the Commissioner at step five. Id. At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. Her v. Comm'r of Soc. Sec., 203 F.3d 388, 391 (6th Cir. 1999) (citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987)).

## III.    STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 405 (6th Cir. 2009) (citing Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997)). If the ALJ applied the correct legal standards and his findings are supported by substantial evidence in the record, his decision is conclusive and must be affirmed. Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Cutlip v. Sec'y of Health & Human Servs., 25 F.3d 284, 286 (6th Cir. 1994) (citing Kirk v. Secretary of Health & Human Servs., 667 F.2d 524, 535 (6th Cir. 1981)) (internal citations

4

omitted).

It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. Crisp v. Sec'y of Health & Human Servs., 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." Buxton v. Halter, 246 F.3d 762, 773 (6th Cir. 2001) (quoting Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984) (citing Myers v. Richardson, 471 F.2d 1265 (6th Cir. 1972)).

In addition to reviewing the ALJ's findings to determine whether they were supported by substantial evidence, the Court also reviews the ALJ's decision to determine whether it was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner. See Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004).

On review, the plaintiff "bears the burden of proving his entitlement to benefits." Boyes v. Sec'y. of Health & Human Servs., 46 F.3d 510, 512 (6th Cir. 1994) (citation omitted).

IV.     **POSITIONS OF THE PARTIES**

On appeal, the Plaintiff asserts three allegations of error committed by the ALJ. First, the Plaintiff contends that the ALJ erred by failing to consider Listing 1.04A. [Doc. 15 at 22-23]. Second, the Plaintiff contends that the ALJ failed to properly weigh certain evidence of record, including the opinions of treating psychiatrist Paul Pyles, M.D., consultative examiner

5

Patricia Maffeo, M.D., nurse practitioner Michelle Cate, and therapist Kyle Williamson, as well as the testimony of the Plaintiff's mother, Mary Huskey. [Id. at 13-20]. Finally, the Plaintiff avers that because she suffers from non-exertional limitations, the ALJ improperly relied on the medical-vocational guidelines ("the Grids") at step five in determining that other work existed in the national economy the Plaintiff could perform. [Id. at 20-22].

The Commissioner responds that the Plaintiff has failed to establish that she meets or equals all of the requirements of Listing 1.04A and that the ALJ's failure to explicitly discuss the listing at step three is not reversible error under Sixth Circuit case law rejecting a "heightened articulation standard." [Doc. 17 at 5-9]. Moreover, the Commissioner maintains that the ALJ properly considered each opinion challenged by the Plaintiff, as well as the testimony offered by the Plaintiff's mother, and that the ALJ's consideration of such is supported by substantial evidence. [Id. at 9-15]. Lastly, the Commissioner argues that the ALJ's reliance on the Grids at step five was appropriate because although the Plaintiff had non-exertional limitations, said limitations had little to no effect on the occupational base of unskilled work. [Id. at 15-17].

The Plaintiff filed a reply, asserting that her pre-hearing brief submitted to the ALJ pointed to specific evidence that raised a substantial question that the Plaintiff meets or equals Listing 1.04A, and therefore, the ALJ should have discussed the listing. [Doc. 18 at 1-3]. Additionally, the Plaintiff argues that the Commissioner fails to point to any evidence within the record that contradicts the opinions of Ms. Cate and Mr. Williamson, which the Plaintiff avers is the same error committed by the ALJ in her decision. [Id. at 3-4]

## V.    ANALYSIS

The Court will address the Plaintiff's allegations of error in turn.

## A. Listing 1.04A

The Plaintiff's first assignment of error is that the ALJ failed to explicitly consider Listing 1.04A despite arguments raised in the Plaintiff's pre-hearing brief [Tr. 237] that her back impairment is of listing level severity. In the disability determination, the ALJ does not mention Listing 1.04A at step three. Rather, the ALJ concludes that the evidence does not "suggest[] the presence of any impairment or combination of impairments of listing level severity." [Tr. 23].

At step three, the ALJ must determine whether an impairment is of such severity that it meets, or medically equals, one of the listings within the "Listing of Impairments" codified in 20 C.F.R., Part 404, Subpart P, Appendix 1. Walters, 127 F.3d at 529; Foster v. Halter, 279 F.3d 348, 352 (6th Cir. 2001). Each listing specifies "the objective medical and other findings needed to satisfy the criteria of that listing." 20 C.F.R. §§ 404.1525(c), 416.925(c). Only when an impairment satisfies *all* of the listing's criteria will the impairment be found to meet a listing. §§ 404.1525(d), 416.925(d).

While the claimant bears the burden of proof at step three, Walters, 127 F.3d at 529, she must do more than argue that the ALJ failed to address a relevant listing; the claimant must demonstrate that the failure "raise[s] a substantial question as to whether [the claimant] could qualify as disabled" under the challenged listing. Abbott v. Sullivan, 905 F.2d 918, 925 (6th Cir. 1990); see Sheeks v. Comm'r of Soc. Sec. Admin., 544 F. App'x 639, 641 (6th Cir. 2013) (holding that the regulations do not require an ALJ to discuss every possible listing that a claimant could meet). A claimant raises a substantial question by "point[ing] to specific evidence that demonstrates [s]he reasonably could meet or equal every requirement of the listing." Smith-Johnson v. Comm'r of Soc. Sec., 579 F. App'x 426, 432 (6th Cir. 2014).

Here, the Plaintiff contends that her back impairment meets or equals Listing 1.04A

7

which requires evidence of the following:

> 1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
>> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);

20 C.F.R. Pt. 404, Subpt. P, App. 1, 1.04.  The Plaintiff argues that examination findings made by neurologist Michael Fromke, M.D., demonstrate that the Plaintiff meets Listing 1.04A.  [Doc. 15 at 22].  Additionally, the Plaintiff avers that because her pre-hearing brief presented arguments that her back impairment satisfied the criteria of Listing 1.04, the ALJ's failure to mention or discuss the listing is reversible error.  [Id. at 22-23].

On August 30, 2011, the Plaintiff was examined by Dr. Fromke following an MRI that was performed the preceding month.  The MRI revealed disc degeneration with spondylosis at L4-5 and L5-1, mild disc bulging at L4-5 with minimal stenosis, and a central to left sided disc herniation at L5-S1 with compression of the left S1 nerve root with spinal stenosis [Tr. 378, 430].  Upon examination, Dr. Fromke observed that the Plaintiff had full motor strength in her bilateral upper and lower extremities, normal muscle tone, and full range of motion in the cervical and thoracolumbar spine and her back.  [Tr. 430].

The Court finds that Dr. Fromke's examination findings are directly at odds with the criteria set forth in paragraph A which requires limitations of motion of the spine, motor loss, and sensory or reflex loss.  In addition, it is at least questionable whether the Plaintiff meets

paragraph A's requirement for positive straight-leg raises as Dr. Fromke noted that the Plaintiff was only positive on the left leg but made no indication whether the straight-leg raises were conducted in the sitting or supine position. [Tr. 430].

The Commissioner cites to these shorting comings as evidence that the Plaintiff is unable to meet her step three burden. [Doc. 17 at 6-7]. However, the Plaintiff also argues that the ALJ erred by failing to discuss Listing 1.04A after the Plaintiff's pre-hearing brief requested that the listing be considered. While the Court is unaware of any controlling case law that obligates an ALJ to discuss a particular listing by virtue of a claimant's request, case law does direct the ALJ to address a particular listing when the claimant points to specific evidence that raises a substantial question that the listing's criteria could be met. See Smith-Johnson v. Comm'r of Soc. Sec., 579 F. App'x at 432. The Court observes that in the Plaintiff's pre-hearing brief, she cites to medical records that indicate that subsequent to and in addition to Dr. Fromke's findings, the Plaintiff experienced decreased motion of the spine [Tr. 453, 457], reduced motor loss (+3/5 strength) [Tr. 626], distribution of pain [Tr. 447, 626], sensory and reflex loss [Tr. 430-31], and was positive for straight-leg raises [Tr. 430, 447]. It remains to be seen whether this evidence demonstrates that the Plaintiff was under an impairment for the requisite 12-month durational period required by the regulations, particularly in light of several of Dr. Fromke's findings that are inapposite of paragraph A's criteria. However, the ALJ, not the Court, is charged with weighing the evidence and resolving conflicts therein. Because the ALJ does not mention Listing 1.04A and her step three finding is void of any discussion as to why the foregoing evidence is insufficient to satisfy the listing, the Court finds the ALJ's step three finding is not supported by substantial evidence.

The Commissioner correctly points out [Doc. 17 at 7] that the Court of Appeals for the

Sixth Circuit has rejected a "heightened articulation standard" at step three and has held that the ALJ need not spell out "every consideration that went into the strep three determination" or 'the weight he gave each factor in his step three analysis." Bledsoe v. Barnhart, 165 F. App'x 408, 411 (6th Cir. 2006)). In other words, an error committed at step three may be harmless if elsewhere in the disability determination, the ALJ provides a reasoned explanation as to why the claimant's impairment does not satisfy a listing. See id. (implicitly endorsing the practice of looking at the entirety of the ALJ's decision for statements and cited reasons as to why the claimant's impairment does not meet a listing).

Here, the Court is unable to conclude that the remainder of the ALJ's decision provides sufficient analysis or discussion that would shed some light as to why the Plaintiff's impairment neither met nor equaled Listing 1.04A. While the ALJ considered the Plaintiff's July 2011 MRI and Dr. Fromke's treatment notes, as well as other medical evidence touching on the Plaintiff's back disorder (although not the specific examination findings cited by the Plaintiff in her pre-hearing brief) [Tr. 26-28], the decision only offers a summarization of the evidence, not "an explained conclusion, in order to facilitate meaningful judicial review." Reynolds v. Comm'r of Soc. Sec., 424 F. App'x 411, 416 (6th Cir. 2011) (finding it is impossible to determine whether the ALJ's step three decision was supported by substantial evidence where the ALJ did not evaluate the evidence, compare it to the relevant listing at issue, and provide an explained conclusion).

Accordingly, the Court finds that the Plaintiff has pointed to specific evidence that raises a substantial question that she could reasonably meet or equal the requirements of Listing 1.04A. Therefore, the Court will recommend that this case be remanded to the ALJ to consider whether the Plaintiff's back impairment meets or equals Listing 1.04A.

**B.     Consideration of the Evidence**

Next, the Plaintiff contends that the ALJ erred in weighing several opinions of record, including opinions by treating psychiatrist Paul Pyles, M.D., consultative examiner Patricia Maffeo, M.D., nurse practitioner Michelle Cate, therapist Kyle Williamson, as well as the testimony of the Plaintiff's mother, Mary Huskey.

### *1.     Paul Pyles, M.D.*

On March 8, 2012, the Plaintiff was seen by Dr. Pyles for an initial evaluation at Peninsula where the Plaintiff received mental health services.  [Tr. 570-73].  The Plaintiff desired "to get back on her Seroquel and to get back into therapy."  [Tr. 571].  Upon examination, the Plaintiff appeared to have fair judgment and fund of knowledge, but her memory, attention, and concentration were impaired.  [Id.].  Dr. Pyles assessed a global assessment of functioning ("GAF") score of 55 [Tr. 572], indicating moderate symptoms or moderate difficulty in social or occupational functioning.  Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 34, 4th ed. (revised) 2000.  Dr. Pyles recommended that the Plaintiff continue services with Peninsula, including medication management, therapy, case management, and follow-up with the nurse practitioner.  [Tr. 572].

In the disability determination, the ALJ observed that the Plaintiff presented for a psychiatric intake with Dr. Pyles who recommended restarting the Plaintiff's medication and referred her to counseling.  [Tr. 27].  In addition, the ALJ noted that Dr. Pyles assigned a GAF score of "55, indicative of only moderate restrictions in social and occupational functioning." [Tr. 27] (citing Exhibit 15F).  Later in the decision, the ALJ gave "great weight" to Dr. Pyles' psychiatric intake evaluation.  [Tr. 29].

The Plaintiff argues that while the ALJ correctly assigned "great weight" to Dr. Pyles' opinion, the ALJ's decision fails to indicate why certain limitations assessed by Dr. Pyles were not reflected in the Plaintiff's residual functional capacity ("RFC"). [Doc. 15 at 20]. The Plaintiff cites to treatment records from Peninsula in which a "functional assessment" was performed on February 15, 2012, and indicate that the Plaintiff had marked dysfunction in activities of daily living, interpersonal skills, concentration, and adaption. [Id.] (citing Tr. 540-41). The Plaintiff argues that the ALJ erred by failing to explain why these marked limitations were not incorporated into the Plaintiff's RFC. [Id.].

The Court finds that the Plaintiff incorrectly attributes these marked limitations to Dr. Pyles. Dr. Pyles performed his evaluation on March 8, 2012, and did not assess any functional limitations. [Tr. 570-73]. The limitations cited by the Plaintiff were assessed the prior month during the Plaintiff's intake appointment, and treatment notes from the intake appointment do not indicate the author of those medical records. The Plaintiff does not present any evidence that the marked limitations assessed during the Plaintiff's February intake are attributable to Dr. Plyes' March opinion, and the Court's own review of the record fails to reveal otherwise.[1]

Accordingly, the Court finds that the challenged limitations were not assessed by Dr. Pyles, and therefore, the ALJ did not err in his consideration of Dr. Pyles' opinion.

### 2. Patricia Maffeo, M.D.

The Plaintiff also takes issue with the ALJ's consideration of the opinion offered by Dr. Maffeo who performed a consultative examination on May 14, 2012. Dr. Maffeo conducted a

---

[1] The Court notes that during the Plaintiff's February intake appointment, the Plaintiff was assigned a GAF score of 45, indicating serious symptoms or serious impairment in social or occupational functioning, Am. Psychiatric Ass'n, supra note 11, at 34, contemporaneous with the "functional assessment." [Tr. 541]. In the disability determination, the ALJ attributed the Plaintiff's GAF score of 45 to "an intake worker," not Dr. Pyles, and assigned it little weight. [Tr. 29].

psychological evaluation [Tr. 579-82] in which she concluded that the Plaintiff was moderately to severely impaired in her ability to understand, remember, and adapt to change, and was severely impaired in her ability to sustain concentration and persistence and interact with others [Tr. 582].

The ALJ discussed [Tr. 28] what she observed as "significant inconsistencies" between Dr. Maffeo's opinion and the opinion of consultative examiner Philip Axtell, Ph.D., who also performed a consultative psychological evaluation several months prior on December 21, 2011 [Tr. 487-90]. Dr. Axtell opined that the Plaintiff was moderately to markedly impaired in her ability to remember and sustain concentration and was moderately impaired in her ability to adapt to change and interact with others. [Tr. 490]. The ALJ observed that the Plaintiff reported to Dr. Axtell that she drove her son to school regularly (if needed), that she was unable to provide the names of her medications, and that she denied abusing drugs. [Id.]. The ALJ apparently found this information contradictory to reports later made by the Plaintiff to Dr. Maffeo in May 2012, in which the Plaintiff relayed that she stopped driving about three months ago and that her mother transports her to any necessary appointments, she was able to list the names and dosages of her medications, and she reported that her husband made her do methamphetamines and other drugs. [Id.] (citing Exhibit 19F). The ALJ subsequently assigned "no weight" to both opinions "because they provided the same essential information yet reached different conclusions." [Tr. 29]. They ALJ also observed that Dr. Axtell had noted evidence of malingering and that the Plaintiff had put forth minimal effort during the examination. [Tr. 28] (citing Exhibit 7F). The ALJ concluded that she agreed with Dr. Axtell's opinion that the Plaintiff "*malingered throughout the psychological evaluation*" and further concluded that the Plaintiff "*most likely malingered during the evaluation performed by Dr. Maffeo.*" [Tr. 29]

13

(emphasis in the original).

The Plaintiff argues that the limitations assessed by both consultative examiners are very similar which undermines the ALJ's conclusion that neither opinion was deserving of great weight since they were provided the same essential information yet reached different conclusions. [Doc. 15 at 13]. The Court agrees. Both doctors opined very similar limitations, finding that the Plaintiff was moderately to severely (or markedly) limited in her ability to remember and understand, sustain concentration and persistence, and adapt to change. Only with regard to interacting with others did the consultative examiners' opinions more widely differ with Dr. Maffeo finding the Plaintiff to be severely limited and Dr. Axtell finding the Plaintiff to be moderately limited.

The Court also joins other concerns expressed by the Plaintiff. Specifically, the Plaintiff takes issue with the ALJ's conclusion that the Plaintiff must have malingered during her examination with Dr. Maffeo by virtue of Dr. Axtell observing some evidence of malingering during his examination. [Doc. 15 at 14]. Indeed, the ALJ summarily concludes, without explanation, that the Plaintiff likely malingered during Dr. Maffeo's evaluation because Dr. Axtell expressed malingering concerns. This sort of speculative reasoning is not conducive to the substantial evidence standard enumerated by the regulations.

The parties also disagree whether the Plaintiff's reports to the consultative examiners contained "significant inconsistencies." With regard to the Plaintiff's differing accounts about driving and recalling the names of her medication, the Plaintiff argues that it is plausible that she simply stopped driving all together by the time she was examined by Dr. Maffeo and that she was also better prepared during her second consultative examination which allowed her to recall the medications she took. [Doc. 15 at 14]. The Commissioner contends that the Plaintiff's

14

arguments amount to nothing more than a disagreement with how the ALJ weighed the evidence, which is not reversible error and is precisely what the regulations charge the ALJ to do. [Doc. 17 at 10-11]. The Court finds that it need not resolve this issue because the ALJ ultimately rejected both opinions on the basis that the consultative examiners arrived at different conclusions and the likelihood that the Plaintiff was malingering during Dr. Maffeo's examination, reasons this Court has found are not supported by substantial evidence.

Therefore, the Plaintiff's allegation of error is well-taken. The Court will recommend that this case also be remanded to the ALJ to reconsider Dr. Maffeo's opinion consistent with 20 C.F.R. §§ 404.1527(c) and 416.927(c), and to the extent that the ALJ finds the limitations assed by Dr. Maffeo and Dr. Axtell substantially differ, the ALJ must explain her conclusion.

### 3. *Michelle Cate, F.NP., and Kyle Williamson, M.S.*

The Plaintiff also contends that the ALJ erred in weighing the opinions of Ms. Cate and Mr. Williamson, each of whom provided a "Residual Function Capacity Medical Source Statement" on the Plaintiff's ability to perform certain work activity.

"Other sources" include medical sources, such as nurse practitioners and therapist, that are not "acceptable medical source" under the regulations. 20 C.F.R. §§ 404. 1513(d), 416.913(d). Although "other sources" opinions are not subject to any special degree of deference, Noto v. Comm'r of Soc. Sec., 632 F. App'x 243, 248-49 (6th Cir. 2015), they are "important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file." Soc. Sec. Rul. 06-03p, 2006 WL 2329939, *4 (Aug. 9, 2006). The ALJ "generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's

reasoning, when such opinions may have an effect on the outcome of the case." Id. at *6.

Ms. Cate evaluated the Plaintiff's physical impairments on July 24, 2013, by responding to a variety of short answer and multiple-choice questions. [Tr. 837-41]. Ms. Cate indicated that the Plaintiff suffers from lumbago and neuropathy, bilateral knee pain and instability, chronic anxiety, bipolar disorder, insomnia, and carpal tunnel syndrome. [Tr. 837]. As a result of the Plaintiff's impairments, Ms. Cate opined that the Plaintiff could lift and carry less than five pounds frequently, five pounds occasionally, and 10 pounds rarely, she would need to lie down for eight hours during an eight-hour workday, she could sit, stand, and walk for less than one hour during an eight-hour workday, she would need unscheduled breaks every hour to lie down for 30-45 minutes, she could reach, handle, or finger only five to 10 percent of the time during an eight-hour workday, she could not climb stairs, ladders, scaffolds, ropes, or ramps, she would be "off task" more than 30 percent of time during an eight-hour workday, and she would miss five or more workdays per month. [Tr. 838-40].

On July 25, 2013, Mr. Williamson similarly responded to a variety of short answer and multiple-choice questions but with regard to the Plaintiff's mental functional limitations. [Tr. 842-46]. The medical source statement provided that the Plaintiff suffers from a mood disorder, not otherwise specified, which affects the Plaintiff's physical well-being. [Tr. 842]. Mr. Williamson opined that the Plaintiff would have difficulty with the following mental abilities 10 percent of the time or greater: understand, remember, or carry out simple or detailed instructions, maintain attention and concentration for extended periods of time, perform activities within a schedule, sustain an ordinary routine without special supervision, work in coordination with or in proximity to others without being distracted by them, complete a normal workday and workweek without interruptions from psychologically based symptoms, perform at a consistence

16

pace without an unreasonable number of rest periods, interact appropriately with the general public, get along with coworkers and peers without distracting them, maintain socially appropriate behavior, respond appropriately to changes in the work setting, be aware of normal hazards and take appropriate precautions, travel in unfamiliar places or use public transportation, and set realistic goals or make plans independently of others. [Tr. 843-44]. In addition, Mr. Williamson opined that the Plaintiff would be "off task" more than 30 percent of the time during an eight-hour workday and would miss five or more days of work per month. [Tr. 844-45]. Finally, Mr. Williamson assigned the Plaintiff a GAF score of 55, indicating moderate symptoms or moderate difficulty in social or occupational functioning. Am. Psychiatric Ass'n, supra p. 11, at 34

Observing that Ms. Cate's opinion offered excessive restrictions, the ALJ expressed boilerplate language that sometimes a treating source's favorable opinion is reflective of his or her sympathies towards a patient or given in an effort to avoid doctor-patient tensions after a patient is insistent in seeking supportive reports. [Tr. 29]. The ALJ remarked that although she could not confirm such a motive in this case, such motives appear to exist where a treating source's opinion departs substantially from the rest of the evidence of record as found to be the case here. [Id.]. The ALJ also noted that Ms. Cate is not a treating physician and that opinions rendered from treating physicians are deserving of more weight than opinions from a non-physician. [Id.].

With regard to Mr. Williamson's opinion, the ALJ found the mental limitations Mr. Williamson had assessed were far more restrictive then reflect by the Plaintiff's GAF score of 55. [Tr. 29]. As a result, the ALJ provided "some weight" to Mr. Williamson's opinion but "only as it is consistent with the GAF of 55 determined by treating psychiatrist Dr. Pyles because

17

therapist Mr. Williamson *is not a treating psychiatrist or psychologist and functional limitations provided by this therapist are not consistent with the record in its entirety*." [Id.] (emphasis in the original).

The Plaintiff argues that the ALJ does not specify which evidence is inconsistent with either opinion. [Doc. 15 at 16]. Moreover, the Plaintiff argues that the ALJ's "physician sympathy" paragraph with regard to Ms. Cate is not supported by the record and that "cherry-picking" Mr. Williamson's opinion to focus on the GAF score is not a sufficient basis to reject the opinion. [Id.]. The Commissioner responds that ALJ discussed and weighed the opinions consistent with agency regulations, and the Plaintiff's contention to the contrary simply amounts to a disagreement with how the ALJ should have weighed the opinions. [Doc. 17 at 12].

The Court finds the reasons given for rejecting Ms. Cate's opinion deficient. While discounting a medical source's opinion that is based upon sympathy for the patient is "within the ALJ's purview," Osborne v. Comm'r of Soc. Sec., No. 1:13CV1574, 2014 WL 4064078, at *15 (N.D. Ohio Aug. 15, 2014), there is no indication here that either sympathy or pressure from the Plaintiff influenced Ms. Cate's opinion. Moreover, the Sixth Circuit has found identical boilerplate language to be inappropriate grounds for rejecting a medical source's opinion when it is the only ground asserted by the ALJ. See Blakley v. Comm'r Of Soc. Sec., 581 F.3d 399, 408 (6th Cir. 2009) (finding that the ALJ's rejection of a treating physician's opinion solely on the grounds that the doctor's motives were suspect was insufficient to meet the agency's procedural requirements). Although the ALJ provided at least two additional reasons for rejecting Ms. Cate's opinion, the Court finds them to be unsupported by the record.

First, the ALJ states that Ms. Cate is not a physician and that while her opinion is considered, it is more appropriate to give greater weight to a treating physician. While it is true

18

that Ms. Cate is an "other source," and as a general rule her opinion is entitled to less weight than that of a treating physician, see 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2), there is no treating physician in this case who offered a medical opinion on the Plaintiff's physical functional limitations. Therefore, there is no competing opinion of record at odds with Ms. Cate's opinion that was entitled to greater weight as a matter of law. Second, the ALJ gave the opinion less weight because it was not consistent with the "entire medical record." However, the record contains evidence of degenerative disc disease, nerve root impingement, and examination findings consistent with the Plaintiff's complaints of pain, as noted above with regard to the Court's discussion of Listing 1.04A, that may indeed be corroborative of the limitations opined by Ms. Cate.

With regard to Mr. Williamson's opinion, the Court finds no error committed by the ALJ. The ALJ properly observed that the limitations Mr. Williamson assessed were at odds with the Plaintiff's less restrictive GAF score which indicated only moderate limitations in social and occupational functioning. See Goff v. Barnhart, 421 F.3d 785, 791 (8th Cir. 2005) (holding that the ALJ did not err in assigning less than controlling weight to the opinion of plaintiff's treating physician who had opined extreme limitations but whose treatment notes only reflected a GAF of 58, indicating moderate symptoms); Owens v. Comm'r of Soc. Sec., No. 3:11 CV 2690, 2013 WL 1284305, at *11 (N.D. Ohio Jan. 22, 2013) ("Therefore, the ALJ did not err by using Dr. Barnes' GAF scores—which represented her judgment of Plaintiff's functioning—to contradict her more restrictive assessment finding Plaintiff markedly limited and disabled.") adopted by 2013 WL 1284299, at *1 (N.D. Ohio Mar. 26, 2013). Furthermore, the ALJ did not rely on the GAF score alone; the ALJ deferred to the opinion of treating psychiatrist Dr. Plyes which was well within the ALJ's prerogative as fact finder to weigh competing opinions of record. Because

19

the ALJ considered Mr. Williamson's opinion and explained his consideration of the opinion, which the Court finds is supported by substantial evidence, the Court concludes that the ALJ did not err in his treatment of Mr. Williamson's opinion.

Accordingly, the Court will recommend that this case be remanded to the ALJ to reconsider Ms. Cate's opinion, but finds that Mr. Williamson's opinion was appropriately weighed.

### 4. Mary Huskey

The Plaintiff additionally argues that the ALJ did not properly weigh or consider the testimony of Ms. Huskey, the Plaintiff's mother.

The ALJ observed that during the administrative hearing, Ms. Huskey testified that the Plaintiff lived with her for the past five years and that during this time, the Plaintiff was admitted to the hospital in 2011 for stroke-like symptoms but that the doctor believed that uncontrolled anxiety was at issue, that the Plaintiff received treatment for drug abuse in 2004, that the Plaintiff had received special education while in school and is unable to help her own daughter with homework, and described the Plaintiff as a "loner," explaining that the Plaintiff spends most of the day in her bedroom, attends counseling every other work, and will not become involved with others despite her counsel's advice to venture out more. [Tr. 26]. The ALJ also related Ms. Huskey recalling an instance in which the Plaintiff sustained a burn on her arm while cooking. [Id.]. In this regard, the Plaintiff testified that she does not cook because she burnt her arm after forgetting that the stove was on. [Tr. 45-46]. Ms. Huskey explained that while she was home at the time the incident took place and "keep[s] a pretty well close eye on [the Plaintiff]," she did not witness the Plaintiff burn herself but did hear the Plaintiff scream from the other room. [Tr. 59]. The ALJ found it "noteworthy that the claimant's *mother could not corroborate her*

*assertion of burning her arm while cooking*." [Tr. 25] (emphasis in the original).

The Plaintiff maintains that the ALJ erred by failing to assign a specific weight to Ms. Huskey's opinion. [Doc. 15 at 19]. In addition, the Plaintiff contends that the ALJ misstated Ms. Huskey testimony regarding the Plaintiff burning her arm. [Id. at 18-19]. In this regard, the Plaintiff argues that the ALJ's "noteworthy" remark amounts to a disbelief that the event may have occurred, but that Ms. Huskey did not express any doubt about the event occurring, only that she was in the other room when it happened. [Id. at 19]. The Commissioner argues that although the ALJ did not specify the weight afforded to Ms. Huskey's testimony, the ALJ properly considered and discussed the testimony which is generally consistent with the Plaintiff's RFC. [Doc. 17 at 13]. Moreover, the Commissioner contends that Ms. Huskey's testimony was only one of many factors the ALJ considered in weighing the Plaintiff's credibility. [Id. at 14].

The Court finds that Ms. Huskey is likewise an "other source" under the regulations, see 20 CFR §§ 404.1513(d), 416.913(d), and therefore, her testimony must be considered pursuant to Social Security Ruling 06-03p as set forth above. While the regulations make clear that all relevant evidence in an individual's case record will be consider, 20 C.F.R. §§ 404.1520(a)(3), 416.920(a)(3), Social Security Ruling 06-03p clarifies that "there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision," 2006 WL 2329939 at *6. Generally, the ALJ "*should* explain the weight given to opinions from these 'other sources[]' . . . *when* such opinions may have an effect on the outcome of the case." Id. (emphasis added).

In the present matter, the Court finds that while it may have been more prudent for the ALJ to assign Ms. Huskey's testimony a specific weight, the failure alone is not necessarily reversible error. See id.; see also 20 C.F.R. §§ 404.1513(d) and 416.913(d) ("[W]e *may* also use

21

evidence from other sources to show the severity of your impairment(s) and how it affects your ability to work.") (emphasis added). Social Securing Ruling 06-03p only mandates that "other source" evidence be considered and if the evidence has an effect on the outcome of the case, the ALJ should explain the weight assigned to such evidence. The Court finds that the ALJ properly considered Ms. Huskey's testimony and even if it were to find that a specific weight should have been assigned to the testimony, the Plaintiff has not shown how Ms. Huskey's testimony affects or could change the outcome of the case. Ms. Huskey's testimony that the Plaintiff received special education and is a "loner" is not at odds with the ALJ's RFC determination limiting the Plaintiff to simple and low-level detailed work, occasionally interaction with others, and infrequent change. Although the ALJ may have found it somewhat suspect that Ms. Huskey did not observe the Plaintiff burn her arm, this observation, even if made in error, does not appear to have any substantial impact on the case. The ALJ discounted the Plaintiff's credibility due to the medical evidence of record [Tr. 28], not because of any perceived inconsistencies with testimony offered about the Plaintiff burning herself.

Therefore, the Court finds that the ALJ did not commit reversible error in this regard and the Plaintiff's arguments to contrary are without merit.

### 3. The Grids

Finally, the Plaintiff argues that the ALJ improperly applied the Grids at step five of the sequential evaluation, and that the ALJ should have employed vocational expert testimony since the Plaintiff suffered from non-exertional impairments, which according to the Plaintiff, precludes her from performing a full range of work at any given level of exertion. [Doc. 15 at 20-21]. Because the Court recommends that this case be remanded to the ALJ to reconsider Listing 1.04A and reweigh certain opinion evidence, the Court finds that this last issue is not ripe

22

for review. Depending on the ALJ's reconsideration of the issues on remand, a new step five finding will need to be made. On remand, the ALJ may utilize vocational expert testimony as deemed appropriate.

## VI.    CONCLUSION

Based upon the foregoing, it is hereby **RECOMMENDED**[2] that the Plaintiff's Motion for Summary Judgment [**Doc. 14**] be **GRANTED IN PART and DENIED IN PART**, and the Commissioner's Motion for Summary Judgment [**Doc. 16**] be **GRANTED IN PART and DENIED IN PART**. Upon remand, the Court RECOMMENDS as follows:

1. The ALJ shall reevaluate step three of the sequential evaluation by determining whether the Plaintiff's back impairment meets or equals Listing 1.04A;

2. The ALJ shall reweight the opinion of consultative examiner Patricia Maffeo, M.D.; and

3. The ALJ shall reweigh the opinion of nurse practitioner Michelle Cate.

Respectfully submitted,

_____s/ C. Clifford Shirley, Jr._
United States Magistrate Judge

---

[2] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Civ. P. 72(b)(2). Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140 (1985). The District Court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive or general. Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370 (6th Cir. 1987).